## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Khamin Todd

     v.                       Civil No. 19-cv-235-JD

Northern New Hampshire
Correctional Facility
Warden Cory Riendeau, and
NCF Chef FNU Sol[1]


### REPORT AND RECOMMENDATION

Plaintiff, Khamin Todd, an African American inmate at the Northern New Hampshire Correctional Facility ("NCF"), has filed a complaint (Doc. No. 1) alleging racial harassment and discrimination.  The matter is before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).


### Preliminary Review Standard

The court conducts a preliminary review of prisoner complaints filed in forma pauperis.  See LR 4.3(d)(1); see also 28 U.S.C. §§ 1915(e)(2), 1915A.  The court construes pro se complaints liberally.  See Erickson v. Pardus, 551 U.S. 89, 94

---

[1]This Report and Recommendation recommends that Northern New Hampshire Correctional Facility ("NCF") Warden Riendeau be dropped as a defendant.  The Order issued this date adds NCF Chef Sol as a defendant.  The clerk's office is directed to update the docket accordingly.

(2007) (per curiam).  In considering whether the complaint
states a claim, the court determines whether, stripped of legal
conclusions, and with all reasonable inferences construed in
plaintiff's favor, the complaint contains "sufficient factual
matter, accepted as true, to 'state a claim to relief'" upon
which relief can be granted.  Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (citation omitted).  Claims may be dismissed, sua
sponte, if, among other things, the court lacks jurisdiction, a
defendant is immune from the relief sought, or the complaint
fails to state a claim upon which relief may be granted.  See 28
U.S.C. §§ 1915(e)(2), 1915A(b)(1); LR 4.3(d)(1)(A).


## Background

Todd asserts that while working in the NCF Kitchen on
September 8, 2018, he approached NCF Chef Sol to ask if Todd
could be promoted or assigned to a different prison kitchen job.
Sol told Todd that he would have to work like "Kunta Kinte" in
that new position.  Todd considered Sol's reference to Kunta
Kinte, the African slave, captured and beaten in Alex Haley's
Roots, to be racist, offensive, and humiliating.  Todd obtained
witness statements of other inmates in October 2018,
corroborating Todd's description of Sol's comments and reporting
that Sol had made other racist comments in the past.  See Oct.
9, 2018 Statement of Aaron Bonds (Doc. No. 1-1, at 1); Oct. 25,

2

2018 Statement of James Beverly (Doc. No. 1-1, at 2).  When Todd
reported what Sol had said to Corrections Officer Snyder, Snyder
told Todd he should not return to the kitchen until the incident
was resolved.  See Sept. 10, 2018 Inmate Request Slip ("IRS")
(Doc. No. 1-1, at 3).  Todd alleged he suffered emotional
distress and had trouble sleeping because of the incident.
Sept. 11, 2018 Grievance (Doc. No. 1-1, at 5).

Todd complained to Sol's NCF Kitchen supervisor Joe
Pelletier after the incident.  Pelletier offered Todd the
opportunity to work a different shift in the kitchen, but Todd
declined, explaining that he could not see himself working where
racist comments are displayed and racism takes place.  Sept. 11,
2018 Grievance (Doc. No. 1-1, at 5).  An exhibit attached to the
complaint indicates that Todd was placed on "No Job Available
Status" on September 24, 2018, "due to reasons other than
disciplinary or being threatening to institutional security."
N.H. Dep't of Corr., Placement on Reduced Pay or No Job
Available Status (Doc. No. 1-1, at 7).

Todd submitted an IRS about Sol's remark, followed by a
grievance to Warden Riendeau in September 2018.  See Sept. 10,
2018 IRS (Doc. No. 1-1, at 3); Sept. 11, 2018 Grievance (Doc.
No. 1-1, at 5).  Riendeau responded to Todd's administrative
complaints by stating that Riendeau had confirmed that NCF staff
member Director Hanson was aware of the incident and would

3

investigate the matter further, in connection with Hanson's

supervisory responsibilities over the NCF Kitchen.  See Sept.

19, 2018 Response (Doc. No. 1-1, at 3).

The complaint asserts the following claims for damages

under 42 U.S.C. § 1983 and state law:

> 1.   Chef Sol violated Todd's Fourteenth Amendment
> right to equal protection, in that Sol responded to Todd's
> request for a new job by making a humiliating racist
> remark, saying Todd could have or hold that new position
> only if Todd worked as hard as Kunta Kinte, rendering Sol
> liable under § 1983.

> 2.   Defendant Warden Riendeau violated Todd's
> Fourteenth Amendment right to equal protection by failing
> to prevent or respond adequately to Sol's use of racist
> remarks in the NCF Kitchen, rendering Riendeau liable under
> § 1983.

> 3.   Defendants are liable for damages for tortious
> conduct under state law.

## Discussion

I.   Equal Protection

A.   Standard

The Equal Protection Clause of the Fourteenth
Amendment provides that a state may not "deny to any
person within its jurisdiction the equal protection of
the laws."  U.S. Const. amend. XIV, § 1.  To that end,
the Equal Protection Clause provides that "all persons
similarly situated should be treated alike."  City of
Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439
(1985).

Perry v. Whitehead, Civ. Action No. 5:15cv139, 2018 U.S. Dist.

LEXIS 51978, at *22, 2018 WL 3148231, at *7 (N.D.W. Va. Jan. 25,

2018), R&R adopted, 2018 U.S. Dist. LEXIS 51202, 2018 WL 1518353

(N.D.W. Va. Mar. 28, 2018).

> Generally, in order to establish an Equal Protection
> Claim, a plaintiff "must first demonstrate that he has
> been treated differently from others with whom he is
> similarly situated and that the unequal treatment was
> the result of intentional or purposeful
> discrimination.  If he makes this showing, the court
> proceeds to determine whether the disparity in
> treatment can be justified under the requisite level
> of scrutiny."

Perry, 2018 U.S. Dist. LEXIS 51978, at *22, 2018 WL 3148231, at

*7 (quoting Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir.

2002)).

"Standing alone, simple verbal harassment does not

constitute cruel and unusual punishment, deprive a prisoner of a

protected liberty interest or deny a prisoner equal protection

of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.

2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir.

2007) ("Verbal abuse by correctional officials, even the use of

reprehensible racially derogatory language, is not by itself

unconstitutional race discrimination 'unless it is pervasive or

severe enough to amount to racial harassment.'" (citation

omitted)).

> The use of [a racial] epithet is . . . strong evidence that
> a comment or action is racially motivated.  The question in
> the equal protection context, however, is not just whether
> the conduct is racially motivated but also whether that
> action deprives a person of 'equal protection of the laws.'
> U.S. Const. amend. XIV.  Where the conduct at issue
> consists solely of speech, there is no equal protection
> violation.

Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999).


   B.    Racial Harassment and Discrimination – Claim 1

   In Claim 1, Todd alleges that Sol responded to Todd's
request for a new prison job by telling Todd, a black man, that
Todd needed to work like an African slave in the new position.
The complaint's allegations, if taken as true, suggest Sol more
than once has used racist language in the NCF Kitchen, failing
to meet the barest minimum requirement of a supervisor's
professional duty to treat others at work with respect.
Moreover, Todd's allegations state a claim that Sol violated
Todd's right to equal protection, in subjecting Todd to a
racially motivated requirement of having to work like a slave,
as a condition on Todd's ability to have or hold a new job in
the NCF Kitchen.  In an Order issued this date, the court has
directed service of Todd's Fourteenth Amendment equal protection
claim against Sol (Claim 1).


   C.    Supervisory Liability - Claim 2

   In Claim 2, Todd has alleged that defendant Warden Riendeau
violated Todd's equal protection rights by failing to prevent or
properly respond to Sol's racist remarks in the NCF Kitchen.

     A supervisor may be held liable for the constitutional
     violations committed by his subordinates where "an
     affirmative link between the behavior of a subordinate

6

and the action or inaction of his supervisor exists
such that the supervisor's conduct led inexorably to
the constitutional violation."  A plaintiff can
establish that "affirmative link" by alleging that the
supervisor was "a primary violator or direct
participant in the rights-violating incident," or that
"a responsible official supervises, trains or hires a
subordinate with deliberate indifference toward the
possibility that deficient performance of the task
eventually may contribute to a civil rights
deprivation."

Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015)

(citations omitted).

Todd complained about Sol after-the-fact through the prison
grievance system.  Warden Riendeau responded to Todd's complaint
by confirming that a prison official with supervisory authority
was investigating the incident.  Todd has not alleged any facts
indicating that Riendeau was previously aware of Sol's history
of racist comments before Todd complained about the incident, or
that Riendeau was otherwise deliberately indifferent to a risk
that Sol's misconduct could violate Todd's federal rights.
Claim 2 thus fails to state a claim that Riendeau is liable
under 42 U.S.C. § 1983 for any constitutional violation.
Accordingly, Claim 2 should be dismissed, and Riendeau should be
dropped as a party.


II.  Tortious Conduct (Claim 3)

The complaint, liberally construed, asserts claims for
damages for "assault and battery" and negligent or intentional

7

infliction of emotional distress under the state common law.  As
to assault and battery, Todd has failed to allege any facts
showing that any defendant physically assaulted him or placed
him in imminent fear of harmful, offensive physical contact.
See Silva v. Warden, 150 N.H. 372, 374, 839 A.2d 4, 6 (2003);
see also Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75–76
(D.N.H. 2013).  Accordingly, the assault and battery claims
should be dismissed.

     Todd also seeks to hold defendants liable for negligent or
intentional infliction of emotional distress.  A defendant in
New Hampshire may be liable for intentional infliction of
emotional distress if the defendant's extreme and outrageous
conduct intentionally or recklessly caused the plaintiff to
suffer severe emotional distress.  See Morancy v. Morancy, 134
N.H. 493, 496, 593 A.2d 1158, 1159 (1991); see also Tessier v.
Rockefeller, 162 N.H. 324, 341, 33 A.3d 1118, 1131 (2011).

> "Emotional distress passes under various names, such
> as mental suffering, mental anguish, mental or nervous
> shock, or the like.  It includes all highly unpleasant
> mental reactions, such as fright, horror, grief,
> shame, humiliation, embarrassment, anger, chagrin,
> disappointment, worry, and nausea.  It is only where
> it is extreme that the liability arises. . . . The law
> intervenes only where the distress inflicted is so
> severe that no reasonable man could be expected to
> endure it.  The intensity and the duration of the
> distress are factors to be considered in determining
> its severity."

Morancy v. Morancy, 134 N.H. 493, 496, 593 A.2d 1158, 1159

(1991) (citation omitted).

The complaint alleges that Todd suffered "emotional distress," consisting of humiliation and sleep trouble, after hearing Sol's racially charged remark about working like "Kunta Kinte." Without more, such allegations do not state a claim that Todd suffered "severe emotional distress," for purposes of stating a claim of intentional infliction of emotional distress. Furthermore, Todd has not alleged facts sufficient to state an actionable claim of negligent infliction of emotional distress, as he has not alleged any facts showing that he suffered physical consequences as a result of Sol's actions. Cf. Thorpe v. N.H. Dep't of Corr., 133 N.H. 299, 304, 575 A.2d 351, 353 (1990) ("before a plaintiff can recover damages for emotional distress pursuant to a negligence cause of action, he or she must prove that physical injury resulted therefrom"). Accordingly, Claim 3 should be dismissed.


Conclusion

For the foregoing reasons, the district judge should dismiss Claims 2 and 3 and drop Warden Riendeau from this action. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the

specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

May 23, 2019

cc:  Khamin Todd, pro se